# IN THE COURT OF APPEALS OF IOWA

No. 17-0357
Filed May 3, 2017

**IN THE INTEREST OF H.L.,**
**Minor Child,**

**M.L., Mother,**
Appellant,

**S.L., Father,**
Appellant.
_____

Appeal from the Iowa District Court for Bremer County, Peter B. Newell, District Associate Judge.

A mother and father separately appeal the termination of their parental rights to their one-year-old daughter. **AFFIRMED ON BOTH APPEALS.**

Shanna M. Chevalier of Laird & Luhring, Waverly, for appellant mother.

Mark A. Milder of Mark Milder Law Firm, Waverly, for appellant father.

Thomas J. Miller, Attorney General, and Gretchen W. Kraemer, Assistant Attorney General, for appellee State.

Elizabeth A. Batey of Vickers Law Office, Greene, guardian ad litem for minor child.

Considered by Vaitheswaran, P.J., and Tabor and Mullins, JJ.

**TABOR, Judge.**

H.L. is now one year old. She has never lived with her biological parents, having been removed from their care days after her birth. The juvenile court order terminating parental rights described mental-health issues, unstable housing, refusals to participate in services, domestic violence, incarceration, and methamphetamine abuse as barriers to placing H.L. in the custody of her parents. The parents both challenge that order. After independently reviewing the record, we conclude none of the parents' arguments warrant relief. Accordingly, we affirm on both appeals.

I.    **Facts and Prior Proceedings**

This family's involvement with the Iowa Department of Human Services (DHS) predated H.L.'s birth in March 2016. The DHS found the mother, Mercedes, and her then live-in boyfriend responsible for physical abuse against Mercedes's oldest daughter, who was airlifted to the University of Iowa Hospitals and Clinics in Iowa City for treatment in 2014 after the one-year-old was found unresponsive with cigarette burns and bruising "all over" her body. The juvenile court terminated Mercedes's rights to that child and another daughter in October 2015. By the time of those termination proceedings, Mercedes was married to Steve, who was not the father of her two older daughters.

H.L. is the child of Steve and Mercedes. She was born with RH alloimmunization hemolytic disease causing jaundice and anemia, which is a serious blood-type incompatibility between mother and baby. At birth, H.L. required intensive care and blood transfusions. Hospital staff members were concerned Steve and Mercedes were unable to meet H.L.'s medical needs. H.L.

was removed from her parents' care four days after birth and left the hospital for placement in foster care. The court adjudicated H.L. as a child in need of assistance (CINA) in early April 2016.

Over the next seven months, Steve and Mercedes regularly attended supervised visitations with H.L. and forged a close bond with their daughter. But outside of those visits, the parents made little progress in addressing the underlying mental-health, substance-abuse, and stability issues identified by the DHS and the juvenile court. Both parents had diagnoses of mental illness that were not fully addressed. The DHS case worker testified the parents had resided in at least six different locations that she was aware of in the past seven months, and often did not reveal to the DHS where they were staying. Neither parent secured steady employment. Both parents tested positive for methamphetamine late in the CINA case and belatedly reported domestic violence in their relationship.

In October 2016, the State petitioned for termination of parental rights; the juvenile court held a hearing on the petition on January 6 and February 17, 2017. On the second day of the hearing, both parents were incarcerated for probation violations and had been transported to court from separate jails in neighboring counties. On February 22, 2017, the juvenile court filed an order terminating Mercedes's parental rights under Iowa Code section 232.116(1)(g) (2017) and the rights of both parents under section 232.116(1)(h). The parents separately appeal the termination order.

## II. Scope and Standards of Review

We review orders terminating parental rights de novo, which means we examine both the facts and the law and decide anew those issues properly preserved and presented. *See In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016); *In re L.G.*, 532 N.W.2d 478, 480 (Iowa Ct. App. 1995). Determinations in child-welfare cases must be supported by clear and convincing evidence—a standard that is less burdensome than proof beyond a reasonable doubt but more strenuous than a preponderance of the evidence; it means "there must be no serious or substantial doubt about the correctness of a particular conclusion drawn from the evidence." *In re B.B.*, 826 N.W.2d 425, 428 (Iowa 2013); *see also In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010).

On the continuance issue, we review for an abuse of discretion. *In re R.B.*, 832 N.W.2d 375, 378 (Iowa Ct. App. 2013).

## III. Analysis of Father's Issues

### A. Denial of Continuance

At the outset of the termination hearing, the father's attorney asked for a continuance, asserting two grounds:

> one, the parties have just within the last day or two decided they are not going to remain together. [Steve] would like to have time to be able to prove that he can do this on his own instead of having this as a team process like it has been up to this point; secondly, he did recently have to serve a ten-day sentence in Buchanan County. He just had to serve that within the last ten days and got out of jail, so in regards to the reports and recommendations he would like a continuance to prepare for the hearing.

Both the State and the guardian ad litem resisted. The court denied the continuance, pointing out the termination hearing had been scheduled for

approximately three months and the DHS reports did not contain "a whole lot of new information" that had occurred since the last review hearing in October 2016. The court also opined the status of the parents' relationship would not be "one of the critical issues" in the termination hearing.

In his petition for appeal, Steve argues the court abused its discretion in denying his request to continue the termination hearing. He alleges going forward with the hearing resulted in prejudice because his attorney "had to present the case with minimal preparation and without giving an accurate picture of the immediate future for each parent."

In juvenile cases, courts are not to grant continuances unless the moving party can show "good cause." Iowa Ct. R. 8.5. We will reverse the denial of a continuance only if the party seeking the delay can show an "injustice" resulted. *See In re C.W.*, 554 N.W.2d 279, 281 (Iowa Ct. App. 1996). "The concept of justice incorporates a prejudice component, which must be viewed in a pragmatic fashion." *R.B.*, 832 N.W.2d at 378.

Here, Steve's prejudice argument is not strong. He had ample notice of the termination hearing, and his counsel was prepared to cross-examine the State's witnesses concerning their reasons for recommending termination of parental rights. As for the parents' decision to separate on the eve of the termination hearing, that development did not compel a continuance. While domestic violence and the parents' volatile marriage were considerations in the termination proceedings, Steve had an opportunity to address their relationship on the hearing's second day, rescheduled more than one month later. But he

opted to present no additional evidence on February 17, 2017. We find no abuse of discretion in the court's denial of the continuance.

### B. Reasonable Efforts

Steve next contends the DHS failed to make reasonable efforts for reunification, specifically by declining to move the parents past fully supervised visitations. He argues the record shows no safety concerns about his parenting skills that justified the supervision requirement.

The DHS is required to "make every reasonable effort" to return a child home "as quickly as possible consistent with the best interests of the child." Iowa Code § 232.102(7); *In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000). In turn, the parents must ask for additional services before permanency or termination proceedings if they believe the current services to be inadequate. *In re A.A.G.*, 708 N.W.2d 85, 91 (Iowa Ct. App. 2005); *see also* Iowa Code § 232.99(3). Our supreme court has held the State's duty to make reasonable efforts toward reunification is not "a strict substantive requirement of termination." *C.B.*, 611 N.W.2d at 493. "Instead, the scope of the efforts by the DHS to reunify parent and child after removal impacts the burden of proving those elements of termination which require reunification efforts." *Id.* While visitation is imperative in achieving reunification, its nature and extent is always controlled by the best interests of the child. *In re M.B.*, 553 N.W.2d 343, 345 (Iowa Ct. App. 1996).

At the October 2016 review hearing, the DHS worker testified that when Steve asked if he could move to unsupervised visitation with H.L., the worker explained that if she didn't know where he was living or who he was living with, she was not able to approve unsupervised visitation. But Steve "still decided not

to disclose that information." The case worker testified the DHS did not have a sufficient level of trust in the parents that the visits could be unsupervised. Under these circumstances, H.L.'s best interests required continued monitoring of visitation, given the parents' instability and lack of transparency. We find no violation of the reasonable-efforts requirement.

### C. Delay of Permanency for Six Months

Steve also argues the district court erred in not granting him more time to work toward reunification. *See* Iowa Code § 232.104(2)(b) (allowing court to delay "placement of the child for an additional six months at which time the court shall hold a hearing to consider modification of its permanency order"). He asserts: "There is no way to know for certain that the parents would be able to turn things around and have the child returned within six months, but there are signs that real and substantive changes are on the horizon."

We disagree with the father's forecast. The record does not show any burst of progress on his part. He had been jailed at the time of the termination hearing. He admitted recently using methamphetamine and had no permanent housing. As the juvenile court observed, the father had not "demonstrated an honest or sincere investment in services." On this record, we agree with the juvenile court's decision not to delay permanency. *A.A.G.*, 708 N.W.2d at 92 (cautioning that court considering delay in permanency must bear in mind all extended time is subtracted from child's chance at a better home life).

### D. Closeness of Parent-Child Relationship

Finally, Steve contends clear and convincing evidence showed termination was detrimental to H.L. due to the closeness of the parent-child relationship. *See*

Iowa Code § 232.116(3)(c). The record indeed shows H.L. has developed a strong attachment to Steve and Mercedes and was comforted by them during their regular visitations. But the record also reveals H.L. viewed her foster parents as her primary caregivers and had a strong bond with them. In this situation, we are not persuaded termination of Steve's parental rights would be detrimental to H.L.'s well-being given the stability she has found by integrating into her foster home over the past year. *See In re A.M.*, 843 N.W.2d 100, 112 (Iowa 2014).

### IV. Analysis of Mother's Issues

### A. Statutory Ground

Mercedes challenges the juvenile court's basis for termination under Iowa Code section 232.116(1)(g) but not (h). When a juvenile court terminates parental rights on more than one statutory ground, we only need to find one ground supported to affirm. *In re S.R.*, 600 N.W.2d 63, 64 (Iowa Ct. App. 1999). Mercedes's failure to challenge termination under paragraph (h) waives any claim of error related to that ground. *See Hyler v. Garner*, 548 N.W.2d 864, 870 (Iowa 1996) (stating "our review is confined to those propositions relied upon by the appellant for reversal on appeal"); Iowa R. App. P. 6.903(2)(g)(3) ("Failure to cite authority in support of an issue may be deemed waiver of that issue."). Therefore, we affirm the juvenile court's order terminating her parental rights under section 232.116(1)(h).

### B. Best Interests

Finally, Mercedes argues termination of her parental rights was not in H.L.'s best interests. She contends her decision to divorce Steve will help her

"overcome the co-dependency she was experiencing" and improve her ability to appropriately parent H.L. But Mercedes is not specific as to why preserving the mother-child relationship would benefit H.L. in the long run.

In our best-interests assessment, we give primary consideration to H.L's safety, to the best placement for furthering her long-term nurturing and growth, and to her physical, mental, and emotional condition and needs. *See* Iowa Code § 232.116(2); s*ee also In re P.L.*, 778 N.W.2d 33, 37 (Iowa 2010). The concern for H.L.'s safety looms large in our consideration. This mother has placed one of her young children in harm's way before. And although H.L.'s autoimmune issues had been resolved by the time of the termination proceedings, the child still received occupational therapy for an eating issue she had developed. It is not clear that Mercedes would be committed to obtaining any ongoing therapy H.L. might require. During this CINA case, Mercedes has not demonstrated self-sufficiency through employment or housing. She has not participated in the parenting or other services offered through the DHS. While ending an unhealthy relationship with Steve may be a step in the right direction, that decision does not ensure Mercedes's ability to provide for H.L.'s future. We agree with the juvenile court's conclusion that moving H.L. toward adoption is in the child's best interests.

**AFFIRMED ON BOTH APPEALS.**